This was an ejectment commenced in the Sumner Circuit Court, in which a verdict and judgment was rendered in favor of the appellee, to reverse which the present appeal is prosecuted.
A bill of exceptions taken upon the trial shows that a grant issued to Anthony Bledsoe, in his lifetime, for upwards of 6000 acres; dated in the year 1786, and that the lessors of the appellee are his heirs-at-law. Some time afterwards, but when does not precisely appear, a judgment was recovered in the County Court of Sumner county in the name of Douglass, one of the appellants, against one Bowman, upon which an execution issued and was levied upon 640 acres of this land, which, at the sheriff's sale, was purchased by Douglass. He sold and conveyed to Henry Lyon, who took possession of the 640 acres, and in 1800 conveyed to Weather-head, and at the same time delivered possession to him, which he retained undisturbed until this suit commenced, which was in 1811; so that more than seven years had elapsed after he took possession under the deed from Lyon before any suit was brought.
The 640 acres, as described in the deed by Lyon, are included in the grant to Bledsoe. What title Bowman had is not shown. No testimony shows that he ever had any claim to the land or possession of any part of it.
The Circuit Court was called upon to instruct the jury, that from this evidence the defendants in the inferior court had acquired a good title by virtue of the possession under the deed from Lyon; but that court was of opinion that the right of the plaintiffs was not barred. The correctness of this opinion is the only point now to be inquired into.
Having, in the case of Lillard v. Elliott and others, given my opinion at great length upon the subject of the statute of seven years' possession, I should deem it my duty in this *Page 382 
case to simply affirm the judgment of the Circuit Court; but as that opinion, from the arguments which I have now heard, is greatly misunderstood, it may not be improper to say a few words, in order that my views may be understood by every person who chooses to consult them.
It is argued that the statute of 1715 only required the defendant to have seven years' naked possession in order to bar the right of the plaintiff, in the event that during that time no entry orclaim had been made; and that the statute of 1797 produced no other alteration than to require the plaintiff, in those cases alone where the defendant was in possession by virtue of a grant or deed of conveyance founded upon a grant, to bring a suit in order to prevent the bar. Consequently, according to this argument, even at this day, a naked possession for seven years, without suit, entry,
or claim, will bar the right of the claimant, and if the defendant has possession for the stipulated time by virtue of a grant or deed, nothing will prevent the bar but a "suit in law." And it is said that the legislature of 1797 made this alteration because they thought it just that persons holding by virtue of some title ought to stand in a better situation than mere naked possessors.
I have given already what I have considered ought to have been the true construction of the Act of 1715; and if that construction be correct, this argument must instantly vanish. It is not necessary to inquire whether, taking both the statutes together, any thing short of a suit will prevent the operation of a bar; it is only necessary to ascertain whether, since the Act of 1797, the bar can be created in any possible case, unless the defendant has been in possession seven years, "by virtue of a grant, or deed of conveyance founded upon a grant," and I am clearly of opinion that it cannot.
The question at last will be, what was meant by the words in the Act of 1797, "deed of conveyance founded upon a grant?"
It is now insisted that, according to the opinion before alluded to, no possession can create a bar unless the defendant or possessor has a regular title, clothed in all the forms, with respect to probate and registration, required by law to pass real estate. The slightest attention to the scope and meaning of that opinion will abundantly demonstrate that it does not authorize the inference now drawn by counsel. The words, "a regular title in form," are frequently employed, but they were principally used in relation to the third and fourth sections of the Act of 1715, the true and genuine construction of which, I repeat again, is not essential to a *Page 383 
correct exposition of the Act of 1797. They never were used in relation to other matter, except by way of contradistinction to a title having no connection with a grant, either in law or equity.
Possession taken "by virtue of a deed founded upon a grant," and continued for seven years, will create a bar. To found a deed upon a grant does not necessarily imply that the chain of title must be regular in every little minutiæ of probate and registration. On the contrary, a deed may be properly said to be "founded upon a grant," if in equity it can be traced to the grant in such a manner as to authorize a title to be decreed to the person to whom the deed was executed. Therefore the want of a regular probate and registration of an intermediate deed or deeds would not prevent the bar. A deed which can in equity be traced to a grant is one thing, and a deed which can show no derivation from a grant, either in law or equity, is another. In the one case, the deed may be said to be "founded upon a grant;" but in the other it cannot be so said, without a manifest subversion of the common use and meaning of words.
Whether, if there is but one grant, the claimant under a second deed from the same grantee, who has been in possession for seven years, can avail himself of the statute, I will not take upon me now to decide, as no such case is before the Court.
Another part of the argument in favor of the operation of the statute suggests that the meaning of the Act of 1797 is, that the deed mustpurport to be, or be supposed to be, "founded upon a grant." I always did believe that no man could undertake an exposition of that act, and of the meaning of the words it employs, without being compelled to use terms, or modes of expression, totally inconsistent with the idea that a deed which exhibits no connection with any grant is sufficient to cover the possession. Take, for example, the terms employed in this argument. What reason have we to suppose that the deed from Lyon to Weatherhead is "founded upon a grant?" Does any such intimation appear upon the face of the deed? Does any proof in the cause, or other circumstances, warrant a belief of that kind? Nothing exists, in any part of the case, to create the supposition that the deed is "founded upon a grant." The same may be said as to the term purport.
I shall close my observations upon this case by remarking, that it is difficult to conceive the legislature intended by the third and fourth sections of the Act of 1715, and by the Act of 1797, to place future possessions upon a better *Page 384 
footing than those which were provided for by the retrospective part of the former act. Upon a former occasion I animadverted upon this part of the question more at large. I shall only now observe that, by the retrospective sections in the Act of 1715, no possessions were intended to be protected except such as had been taken and continued under a title derived, though irregularly, from the grantee. In this case, the possessor has no title derived from the grantee, either irregularly or otherwise; and if such a possession is permitted to create a bar, it will be deciding that at a time when there was no certain mode of conveyance fixed by law, possessions to be protected were, by the legislature, required to be more regular than at future periods, after a certain mode of transferring lands was adopted. I cannot concur in such a proposition.
No opinion of Judge Roane having been filed, the following is believed to contain the substance of it.